IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNIVERSAL BEAUTY PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 4840 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MAXIM BEAUTY PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

This case has had a somewhat involved procedural history. On September 13, 2018, I held a settlement conference. [Dkt. #28]. Unfortunately, while it appeared that the matter initially had been successfully resolved, subsequent difficulties reducing the settlement agreement to writing scuttled the agreement, *Loop Paper Recycling, Inc. v. JC Horizon Ltd.*, 2010 WL 1655254 (N.D.Ill. 2010), and the case continued in front of Judge Norgle. Then, a month later, defendant asked Judge Norgle to enforce the claimed oral agreement which he declined to do. [Dkt. #45]. The case was then transferred to another District Judge. [Dkt. #58]. Ultimately, it was transferred to me with the parties' consent. [Dkt. #63]. On July 2, 2020, I held another settlement conference, which was unsuccessful. [Dkt. #80]. According to the docket, I also granted the plaintiff leave to amend its Complaint. [Dkt. #80]. But leave was granted without first requiring compliance with Rule 15, Federal Rules of Civil Procedure.[1] However, as will be seen, the noncompliance with that Rule does not affect the

---

[1] The Federal Rules of Civil Procedure have adopted a liberal standard for amending: "The court should freely give leave when justice so requires." Rule 15(a)(2). Thus, a district court must allow an
(continued...)

substance or accuracy of the ruling on the defendant's motion to dismiss.

By virtue of the amendment, the plaintiff added Sung Hwan Park, the owner and president of the original corporate defendant, as a defendant. [Dkt. #83]. Mr. Park has responded with a motion to dismiss [Dkt. #93] the Amended Complaint. The defendant's motion has two bases: 1) the three-year statute of limitations has run on claims against Mr. Park, and 2) the Complaint fails to adequately state a claim against Mr. Park. For the following reasons, the Motion [Dkt. #93] is granted on the second basis.

## FACTUAL BACKGROUND

This is a trade dress infringement case, filed in June of 2017. The case involves small, cylindrical, plastic bottles of hair bond glue with small red caps. The plaintiff's bottles have a blue and red label, with a white number 30 (for 30 seconds) and the brand name, SalonPro, in yellow. When this controversy began, the defendant's bottles had a blue and red label with a white number 30 and the brand name, Maxim, in yellow. Upon receiving a cease-and-desist letter from plaintiff, defendant made some changes, getting rid of the blue and red label and the white number 30. But as the red cap and shape and size of the bottle remained the same, plaintiff was not satisfied and sued defendant for trade dress infringement, unfair competition, and deceptive trade practices on June 28, 2017. [Dkt. # 1].

---

[1](...continued)
amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357–58 (7th Cir. 2015). "[D]elay by itself is normally an insufficient reason to deny a motion for leave to amend." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir.2004).

Not much happened after that perhaps because, as the parties have conceded, the case does not appear to involve a substantial amount of damages. Defendant's sales were minimal, [Dkt. # 22, ¶. 4] and the parties wisely decided to have a settlement conference. On September 13, 2018, I held a settlement conference with the parties and their counsel, and, by all appearances, efforts that day were successful. But the parties had agreed on reducing their settlement to writing, [Dkt. ##47-1, ¶. 5; 50, at 2-3], and when there was disagreement on the terms of the settlement, charges of bad faith [Dkt. # 47], fraud, and deceit were, rather cavalierly exchanged. [Dkt. # 50]. Needless to say, the case did not settle.

On August 3, 2020, after the case been on the docket for more than three years, the plaintiff filed an Amended Complaint adding Sung Hwan Park, the owner and president of the original corporate defendant, as a defendant. [Dkt. #83]. The Amended Complaint charged:

> 25. Upon information and belief, Park is engaged in the business of operating several beauty supply retail stores known as Cosmo Beauty in Illinois and Wisconsin.
>
> 26. Over the years, Park had purchased and sold UBP's Salon Pro at his retail stores.
>
> 27. Upon information and belief, Park witnessed the success and popularity of Salon Pro, and was well aware of the significant secondary meaning Salon Pro Trade Dress has achieved within the industry and among the general consumers that "a hair bond glue with red pointed twist cap" or "30 second glue" means and refers to UBP's Salon Pro.
>
> 28. On information and belief, Park was responsible for Maxim's product packaging design and marketing practices described above, and at the time Maxim adopted such packaging design and marketing practices, Maxim and Park was aware of Salon Pro Trade Dress.

[Dkt. #83, ¶ ¶ 25-28].

A Motion to Dismiss the Amended Complaint followed.

**ARGUMENT**

**A.**

We begin with the defendant's statute of limitations argument. Essentially, defendant submits that the three year statute of limitations has run, and that the addition of Mr. Park as a defendant cannot relate back to the Complaint under Fed.R.Civ.P. 15(c). But Rule 15 covers leave to amend, which has already been granted [Dkt. #80], not motions to dismiss. And, in any event, we do not get to Rule 15(c) unless there is a statute of limitations problem. Despite plaintiff having raised it in its response brief, the defendant's brief overlooks the fact that trade dress infringement is a continuing wrong, and as a general principle, "the statute of limitations does not begin to run on a continuing wrong" like infringement until "the wrong is over and done with." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983). *See also Billy Goat IP LLC v. Billy Goat Chip Co. LLC*, 2018 WL 3740542, at *5 (N.D. Ill. Aug. 7, 2018).

The Seventh Circuit explained the concept recently in *United States v. Spectrum Brands, Inc.*, 924 F.3d 337 (7th Cir. 2019):

> The continuing violation doctrine, on the other hand, is aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time; the doctrine serves that end by treating the defendant's misconduct as a continuing wrong and deeming an action timely so long as the last act evidencing a defendant's violation falls within the limitations period. . . . Thus, where the violation at issue can be characterized as a continuing wrong, the limitations period begins to run not when an action on the violation could first be brought, but when the course of illegal conduct is complete.

*Id.*

The Amended Complaint does allege a continuing wrong. It charges that:

> 18. On April 5, 2017, Maxim responded that it will no longer use such similar packaging and all remaining packaging materials have been destroyed. Maxim also

> advised a change of the overall appearance of its hair bond glue product. A copy of Maxim's response is attached hereto as Exhibit 2.
>
> 19. Despite, Maxim's product continued to incorporate and feature the most unique and distinguishable aspect of the Salon Pro Trade Dress which general public readily recognize and tie Plaintiff as the source of origin: 30ml plastic bottle having cylinder shaped body and a red colored pointed twist cap.
>
> 20. In addition, Maxim commenced to market such products at retail stores by displaying them in a box containing a phrase "30 SECOND HAIR GLUE."

[Dkt. #83].

Thus, despite defendant's argument to the contrary [Dkt. #93, at 4; #97, at 2], plaintiff has not pled itself out on the statute of limitations. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). *See also McNeil v. Salvation Army*, 754 F. App'x 469, 471 (7th Cir. 2019)(a district court may dismiss a suit based on the affirmative defense of the statute of limitation, "if the dates provided in the complaint establish that the suit is 'hopelessly time-barred,'...."); *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017)("A limitations defense is not often resolved on a Rule 12(b)(6) motion because a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. . . . But dismissal at this early stage is appropriate when the complaint alleges facts sufficient to establish that the suit is indeed tardy.")

The defendant's argument regarding the allegations against Mr. Park, however, has more traction. Again, Mr. Park is the owner and president of the original corporate defendant. A corporate

5

officer is *individually liable if* he "'personally participates in the manufacture or sale of the infringing article..., uses the corporation as an instrument to carry out his own willful and deliberate infringements, or ... knowingly uses an irresponsible corporation with the purpose of avoiding personal liability.'" *4SEMO.com Inc. v. S. Illinois Storm Shelters, Inc.*, 939 F.3d 905, 912–13 (7th Cir. 2019). *See also Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 233 (7th Cir. 1972); *Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926). In other words, merely being a corporate officer does not necessarily and automatically give rise to personal liability for corporate acts. The allegations here are insufficient to state a claim against Mr. Park, personally.

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Here, all the Amended Complaint says – on information and belief – is that Mr. Park was responsible for Maxim's product packaging design and marketing practices, and at the time Maxim adopted such packaging design and marketing practices, he was aware of plaintiff's trade dress. This is nothing more than a "naked assertion" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557.

Moreover, it is not an allegation that Mr. Park acted outside his official duties. *See Dangler*, 11 F.2d at 947; *Panther Pumps*, 468 F.2d at 233. It is more akin to a corporate officer of a small corporation acting as a corporate officer of a small corporation. Worse, Mr. Park is not named in

6

any of the Amended Complaint's three counts, nor is his conduct alleged to have been in violation of the statutes under which those counts are brought described at all. Again, the only inference to be properly drawn from plaintiff's allegations is that Mr. Park was a corporate officer, acting as a corporate officer. *See, e.g., FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 2007 WL 4335264, at *4 (N.D. Ill. Dec. 5, 2007)("The special showing standard is not met when individual defendants have done nothing beyond the scope of their duties as officers and the corporation was not organized to permit the individual defendants to profit from infringement or hide personal liability."). But that is not enough for the violation that the Amended Complaint seeks to charge.

Alleging someone is "responsible for" conduct is no different than conclusorily claiming they are "liable for." But that leaves a gaping hole where the factual allegations demanded by *Twombly* and *Iqbal* should be. In other words, what did the corporate officer do (according to the Complaint) to *make* him responsible? Plaintiff's allegations point to Mr. Park having a lesser role than something like "directly overseeing efforts to [infringe]." *Cf. BenShot, LLC v. Lucky Shot USA LLC*, 2020 WL 1082748, at *2 (E.D. Wis. Mar. 6, 2020). Courts allowing a Complaint against a corporate officer for infringement have involved allegations far more detailed and specific than the sort of bare bones, conclusory speculation that the Amended Complaint offers here. Thus, in*, UL, LLC v. Am. Energy Prod., LLC*, 2018 WL 398259, at *4 (N.D. Ill. Jan. 13, 2018), the court stressed that the allegation that the named corporate officer "was in general control of a company that engaged in trademark infringement" was insufficient. That allegation was contrasted to an allegation that the named corporate officer personally orchestrated and lied about improper use of a trademark label. The latter sufficed; the former did not. *See also UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 2017 WL 3593117, at *3 (N.D. Ill. Aug. 21, 2017)(corporate officer personally circulated the infringing

materials and actively encouraged and personally directed corporate and outside counsel to use the infringing materials to solicit other clients, in part because officer had a direct financial interest in acquiring these new clients); *Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F. Supp. 2d 975, 977 (N.D. Ill. 2003)(corporate officer personally directed and participated in allegedly infringing activity, as well as personally authorizing that activity); *Peaceable Planet, Inc. v. TY, Inc.*, 185 F.Supp.2d 893 (N.D.Ill.2002)(beyond being "responsible for overseeing development, marketing, and sales of the infringing items; [corporate officer] personally participated in the design of the infringing items; approved and authorized the defendant corporation's actions; and personally promoted the sales of the infringing items").

In view of the fact that there have been three years of discovery in this case – to say nothing of the obvious skill of counsel for the parties – it is odd that we have only an allegation based on information and belief that Mr. Park was "responsible for Maxim's product packaging design and marketing practices." Had there been more, it is likely it would have been pled as a fact and not on information and belief. "That silence is telling." *City of Joliet, Ill. v. New W., L.P.*, 562 F.3d 830, 836 (7th Cir. 2009). *Compare Muhammad v. Oliver*, 547 F.3 874. 877 (7th Cir. 2008)(Posner, J.)("[I]f there is an executed standstill agreement, one would expect an allegation to that effect. There is none. The complaint's silence is deafening.").

Accordingly, the defendant's Motion to Dismiss is granted. But due to the fact that this is the first Amended Complaint in this case, and it is possible the flaws in the allegations against Mr. Park could be remedied, the Amended Complaint is dismissed without prejudice. *Lennon v. City of Carmel, Indiana*, 865 F.3d 503, 509 (7th Cir. 2017)(dismissal for failure to state a claim may be either with or without prejudice); *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 336 (7th Cir.

2015)(dismissal without prejudice suggests that the faults of the complaint could be remedied with a new pleading).

But, just because a party is legally allowed to do something, does not mean it should be done. Despite the liberality of the "continuing wrong" doctrine, the attempted late addition of a party about whom plaintiff knew all along, *three years* after the case began and in the midst of a pandemic, certainly might be expected to be viewed with a jaundiced eye from any court or any observer. The plaintiff's case is about small bottles, with small red caps, and, as plaintiff has conceded, probably involves little money. It need not – should not – result in some pitched battle, fought as though issues of the utmost gravity were involved. Belatedly adding a defendant in a case such as this, on the basis of a sudden claim that a corporate officer acted, essentially as a corporate officer, threatens to give the impression that the attempted addition may have preceded from motives not entirely grounded in the discovered facts. It must not be forgotten that the outcome of any trial is uncertain at best. As the late Judge Will sagely noted, the "'best' case can be lost and the 'worst' case can be won...None of these risks should be underestimated." *In the Matter of Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990). Indeed, "[e]stimating likely jury verdicts is by its very nature an unpredictable pursuit, and from time to time juries are bound to return verdicts that are either substantially more or substantially less than the [parties'] estimates." *Nat'l Indem. Co. v. Chipman*, 2013 WL 1230339, at *14 (D. Utah 2013).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 12/9/20

9